# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF LOUISIANA

CHRISTOPHER J. DRESSER                                    CIVIL ACTION
AND JAMES M. ELSIK

VERSUS                                                   NO. 07-1497 c/w 07-1536 & 07-2896

JOSEPH N. INGOLIA, ET AL                                 SECTION: "C"(5)

## ORDER AND REASONS

Before the Court is a Motion for Reconsideration filed by the defendants, Joseph N.

Ingolia, et al ("Defendants") (Rec. Doc. 96). The plaintiffs, Christopher J. Dresser ("Dresser")

and James M. Elsik ("Elsik") oppose the motion. The motion is before the Court on the briefs,

without oral argument. Having considered the memoranda of counsel, the record and the

applicable law, the Court finds that the motion is **GRANTED IN PART, AND DENIED IN**

**PART**.

## I. BACKGROUND

Christopher J. Dresser and James M. Elsik ("Plaintiffs") brought these cases against

various Coast Guard Administrative Law Judges, their clerks and administrative staff, and the

Commandant of the Coast Guard and his legal staff for declaratory and injunctive relief, Writs of

Mandamus, and *Bivens* actions regarding the revocation, and threatened revocation, of Plaintiffs'

engineering licences and merchant mariner documents. Both Plaintiffs are suing Joseph N.

1

Ingolia and Walter J. Brudzinski in both their official capacity as Administrative Law Judges, and as individuals. And, both Plaintiffs are suing Thad W. Allen in his official capacity as Commandant of the United States Coast Guard and as an individual. Plaintiff Elsik is suing Terry M. Cross in his official capacity as Vice Commandant of the Coast Guard, and as an individual. Plaintiff Elsik is also suing Hanna Liddington, George Allen, Kenneth Wilson, Megan Allison, and Jim Wilson as individuals. Plaintiff Dresser is suing Kenneth Wilson and Alyssa L. Paladino as individuals.

Both Plaintiffs claim that the Coast Guard's Suspension and Revocation ("S & R") hearings violated their Fifth Amendment due process rights because the Administrative Law Judges ("ALJ's") colluded with the other Defendants to pre-determine the outcome of the S & R hearings. In 1997, Plaintiff Dresser voluntarily submitted to a urine drug screen to obtain a "drug free certificate." However, the drug screen returned positive for THC. Plaintiff Dresser asserts that the positive result for THC  was a product of his ingestion of hemp seed oil as a dietary supplement. Subsequent to the positive drug screen, the Coast Guard initiated an investigation culminating in a S & R proceeding against Plaintiff Dresser. ALJ Boggs[1] ruled in favor of the Coast Guard, holding that Plaintiff Dresser used a dangerous drug (marijuana), and revoked Plaintiff Dresser's engineering license. Plaintiff Dresser appealed the decision to the then Commandant of the Coast Guard, T.H. Collins, who affirmed ALJ Boggs' order. Next, Plaintiff Dresser appealed to the National Transportation Safety Board ("NTSB"). The NTSB remanded

---

[1]ALJ Boggs  is not a defendant in the current suit.

the case for a new hearing because of the appearance of impropriety on ALJ Boggs' part.[2] Chief ALJ Ignolia assigned Plaintiff Dresser's case to ALJ Brudinzski on remand. Following a hearing on December 7, 2004, ALJ Brudzinski discussed the case with defendants Wilson and Paladino.[3] On June 14, 2005, ALJ Brudzinski ruled in favor of the Coast Guard, again revoking Plaintiff Dresser's licenses. Plaintiff Dresser's case is currently on appeal to the Commandant of the Coast Guard.

Plaintiff Dresser maintains that ALJ Brudzinski's decision and order revoking his engineering license and merchant mariner documents were unconstitutional because of (1) *"ex parte* communications" between ALJ Brudzinski and Chief ALJ Ingolia, as well as *"ex parte* communications" between ALJ Brudzinski and Defendants Paladino and Wilson; and, (2) an institutionalized ALJ policy to rule in favor of the Coast Guard regarding hemp seed oil defenses to positive toxicology tests. Likewise, Plaintiff Elsik alleges that Chief ALJ Ingolia conducted improper *"ex parte* communications" with the ALJ conducting his S & R hearing (ALJ Massey[4]). Furthermore, Plaintiff Elsik alleges that on April 8, 2005, Chief ALJ Ingolia informed ALJ Massey that there was an unwritten policy to always rule in favor of the Coast Guard. On May 17, 2006, the Vice Commandant of the Coast Guard issued a decision reversing ALJ

---

[2]ALJ Boggs' son represented an insurance company in the civil products liability case that Plaintiff Dresser brought against the manufacturer of the hemp seed oil supplement.

[3] Defendants Wilson and Paladino were attorneys with the ALJ Docketing Center in Baltimore, MD, and were acting as ALJ Brudzinski's docketing clerks.

[4]ALJ Massey has submitted an affidavit discussing her communications with ALJ Brudzinski about the pressure he felt to rule in favor of the Coast Guard in Plaintiff Dresser's case. ALJ Massey's affidavit also describes Chief ALJ Ingolia's attempt to pressure her to rule in favor of the Coast Guard at a February 24, 2005 meeting in the Hale Boggs building, while Plaintiff Elsik's case was  pending (Plaintiffs' Memorandum in opposition to Defendants' motion to dismiss, Exhibit E).

Massey's ruling in favor of Plaintiff Elsik. Plaintiff Elsik's case was remanded for further action, and Chief ALJ Ignolia assigned the case to ALJ Brudzinski.

Notably, the Coast Guard has withdrawn its complaint against Plaintiff Elsik; indeed, ALJ Brudzinski has dismissed, without prejudice, the complaint against Plaintiff Elsik. However, Plaintiff Elsik argues that this Court should grant him injunctive and declaratory relief, and a Writ of Mandamus, as well as his claims for damages under his *Bivens* action because the Coast Guard's complaint was dismissed without prejudice, and thus, the Coast Guard could re-instate its complaint against Plaintiff Elsik

Previously, Defendants filed a motion to dismiss on the grounds that the Court lacked subject matter jurisdiction to entertain some or all of the causes of action, and that the complaint failed to state claims for which the Court may grant a remedy. The Court granted in part, and denied in part the Defendants' motion to dismiss for lack of jurisdiction. Defendants filed a Motion for Reconsideration on October 18, 2007.

First, Defendants argue that Plaintiff Dresser's claims are barred by the Administrative Procedure Act ("APA") because Plaintiff Dresser has appealed the underlying Administrative Law Judge's ("ALJ's") order to the Commandant of the Coast Guard, and thus, there is no "final" agency action for this Court to review. Second, the Government seeks clarification of the Court's order regarding the disposition of Plaintiff Elsik's claims. Third, Defendants ask the Court to find that a Writ of Mandamus is an inappropriate remedy in this case. Fourth, Defendants argue that the Court should abstain from hearing the plaintiffs' complaints. Fifth, Defendants assert that Plaintiff Dresser can supplement his administrative appellate record, and thus, the Court should not entertain Plaintiff's claim for a *Bivens* remedy. Sixth, Defendants

argue that ALJ Ingolia should be entitled to qualified immunity.

## II. LAW & ANALYSIS

The Federal Rules of Civil Procedure do not recognize a "Motion to Reconsider" in those exact terms. *See, Lavespere v. Niagara Mach. & Tool Works, Inc*., 910 F.2d 167, 173 (5th Cir.1990). A motion for reconsideration is considered a Rule 59(e) motion if it is served within ten (10) days of the court's ruling and a Rule 60(b) motion if it is served more than ten (10) days after the court's ruling. *See, Id.* The Court granted in part, and denied in part the Defendants' motion to dismiss for lack of jurisdiction on October 3, 2007. Defendants filed its Motion for Reconsideration on October 18, 2007, within 10 days after the Court's ruling.[5]

Therefore, Rule 59(e) governs Defendants' motion for reconsideration. In *Washington v. CSC Credit Servs., Inc.*, 180 F.R.D. 309 (E.D.La.1998), *rev'd and vacated on other grounds*, 199 F.3d 263 (5th Cir.2000), this Court ruled that alteration or amendment of a previous ruling under Rule 59(e) is proper only upon the movant's showing of: "(1) an intervening change of controlling law; (2) the availability of new evidence; and/or (3) the need to correct a clear and manifest error of fact or law." *Washington*, 180 F.R.D. at 311.

### 1. Finality under the APA & Clarification of Plaintiff Elsik's Claims

Under the APA, "[a] person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute, is entitled to judicial review thereof." 5 U.S.C. § 702. The Supreme Court has held:

---

[5] Under Federal Rule of Civil Procedure 6(a), when a time period is less than eleven (11) days, the intermediate Saturdays, Sundays and legal holidays are not counted.

5

> [Section 702] contains two separate requirements. First, the person claiming a right to sue must identify some "agency action" that affects him in the specified fashion; it is judicial review "thereof" to which he is entitled. The meaning of "agency action" for purposes of § 702 is [ ... ] "the whole or a part of an agency rule, order, license, sanction, relief, or the equivalent or denial thereof, or failure to act," 5 U.S.C. § 551(13). When [ ...] review is sought not pursuant to specific authorization in the substantive statute, but only under the general review provisions of the APA, the "agency action" in question must be "final agency action." See 5 U.S.C. § 704 ("Agency action made reviewable by statute and final agency action for which there is no other adequate remedy in a court are subject to judicial review"). *Lujan v. National Wildlife Federation*, 497 U.S. 871, 882 (1990).

Additionally, the Fifth Circuit has ruled that without a relevant administrative agency statutory provision allowing for judicial review, a federal court has subject matter jurisdiction of final agency action only. *Peoples Nat. Bank v. Office of Comptroller of the Currency of the United States*, 362 F.3d 333, 336 (5th Cir. 2004). Furthermore, the Court notes that, "a non-final agency order is one that does not of itself adversely affect complainant but only affects his rights adversely on the contingency of future administrative action." *Id.* (quoting *Rochester Tel. Corp. v. United States*, 307 U.S. 125, 130 (1939)).

The Fifth Circuit also addressed the issues of finality and exhaustion of administrative remedies under the APA in *U.S. v. Mendez*, 48 F.3d 1401 (5th Cir. 1995). In *Mendez*, the court ruled that section 10(c) of the APA contained the key to determining whether claims against the National Oceanic and Atmospheric Administration (NOAA) were ripe for judicial review, or if the plaintiff had failed to exhaust administrative remedies. The *Mendez* court relied on the Supreme Court's decision in *Darby v. Cisneros*, 509 U.S. 137 (1993) to hold that "courts are not free to impose an exhaustion requirement as a rule of judicial administration where the agency action has already become 'final' under section 10(c)." *Mendez*, 49 F.3d at 1411 (quoting *Darby*, 509 U.S. at 154). Indeed, the Fifth Circuit adopted the Supreme Courts language: "when an

6

aggrieved party has exhausted all administrative remedies prescribed by statute or agency rule,

the agency action is 'final' for purposes of this section and therefore subject to judicial review

under the first sentence of section 10(c)." *Id.* (quoting *Darby*, 509 U.S. at 146). Section 10(c)

contains the APA's exhaustion requirement:

> Except as otherwise expressly required by statute, agency action otherwise final is
> final for the purposes of this section whether or not there has been presented or
> determined an application for a declaratory order, for any form of reconsideration,
> or, unless the agency otherwise requires by rule and provides that the action
> meanwhile is inoperative, for an appeal to superior agency authority. 5 U.S.C. §
> 704.

The *Mendez* court affirmed that section 10(c) applies to "all federal agency actions unless a

statute precludes judicial review or agency action is committed by law to agency discretion."

*Mendez*, 48 F.3d at 1410. The Fifth Circuit has also held that "two conditions must be satisfied

for an agency action to be final: 1) the action must mark the consummation of the agency's

decision-making process; 2) the action must be one by which rights or obligations have been

determined or from which legal consequences will flow." *Peoples Nat. Bank* 362 F.3d at 337

(citing *American Airlines v. Herman*, 176 F.3d 283, 287-88 (5th Cir. 1999). Clearly, the

challenged ALJ's decision to revoke Plaintiff Dresser's license was an action that has legal

consequences. Therefore, the Court must determine whether the ALJ's decision marks the

consummation of the agency's decision-making process to have subject matter jurisdiction over

the plaintiffs' complaints.

In this case, Defendants were not initially able to provide the Court with an applicable

statute, agency rule, or case law to support their claim that the pending administrative appeal

prevented this Court from considering the ALJ's decision as "final" agency action under the

APA. Now, in their motion to reconsider, Defendants point to Title 33 of the C.F.R. which states,

7

"**Unless appealed** pursuant to subpart J of this part, an ALJ's decision becomes final action of the Coast Guard 30 days after the date of its issuance."33 C.F.R. § 22.1101(b)(1) (emphasis added). Additionally, the regulation states, "If the Commandant issues a decision under Subpart J of this part, the decision constitutes final action of the Coast Guard on the date of its issuance." 33 C.F.R. § 22.1101(b)(2). The record clearly shows that Plaintiff Dresser has appealed the decision of ALJ Brudzinski to the Commandant of the Coast Guard. (See Rec. Doc. 32, Plaintiff's motion for a preliminary injunction to stay the Commandant from reviewing the pending administrative appeal).

Here, the agency regulation detailed in the C.F.R. above prohibits the court from considering the ALJ's order as "final" agency action. The regulation is clear on its face that an ALJ's decision is "final" action, unless the decision is appealed. Again, the Court notes that there is a pending administrative appeal before the Commandant of the Coast Guard. Accordingly, the Court finds that Plaintiff Dresser's claims are barred by the APA's finality requirement. *See e.g., Peoples Nat. Bank*, 362 F.3d at 336-37.

The Court reminds the parties that it previously ruled that Plaintiff Elsik's claims did not meet the APA's finality requirement. (See, Rec. Doc. 89, Order granting in part and denying in part Defendants' motion to dismiss). Plaintiff Elsik argued that he may be harmed by future S & R proceedings because Defendants dismissed the complaint against him without prejudice. Yet, as noted above, "a non-final agency order is one that does not of itself adversely affect complainant but only affects his rights adversely on the contingency of future administrative action." *Peoples Nat. Bank,* 362 F.3d at 337. Consequently, neither Plaintiff Dresser, nor Plaintiff Elsik can establish subject matter jurisdiction under the APA. *Id.* Furthermore, the

Court relies on the reasoning above to correct any manifest error of fact or law in any previous ruling regarding the "finality" under the APA of the plaintiffs' complaints. Thus, Defendants motion to reconsider is **GRANTED** on this ground.

### 2. Writs of Mandamus

The Fifth Circuit has held, "[w]hen there is an action against an individual defendant for their actions taken in their official capacity as agents of the United States, that suit is one against the United States itself." *Hagen v. Coggins*, 208 F.3d 1007 at *3 (5th Cir. 2000). And, "[t]he United States may not be sued except to the extent it has consented to such a suit by statute." *Id.* Furthermore, "[a] waiver of sovereign immunity cannot be implied but must be unequivocally expressed." *Irwin v. Department of Veterans Affairs*, 498 U.S. 89, 111 (1990).

In 1976, Congress amended 5 U.S.C. § 702 to allow actions for "declaratory, injunctive or mandamus relief against" [federal officials]. *U.S. v. Mitchell*, 463 U.S. 206, 227 (1983). Thus, claims under the APA for "seeking relief other than money damages" are not barred by sovereign immunity. *Drake v. Panama Canal Com'n,* 907 F.2d 532,535 (1990).

In this case, Dresser and Elsik seek injunctive and declarative relief, as well as Writs of Mandamus against Defendants. In light of the 1976 amendments to § 702 it is clear that under the APA, their claims for non-monetary relief are not be barred by sovereign immunity. Yet, as discussed above, the plaintiffs have not met the APA's "finality" requirements. Thus, the plaintiffs cannot bring claims for declaratory or injunctive relief, nor claims for writs of mandamus against the Defendants under the APA.

Additionally, "the common-law writ of mandamus, as codified in 28 U.S.C. § 1361,[6] is intended to provide a remedy for a plaintiff only if he has exhausted all other avenues of relief and only if the defendant owes him a clear nondiscretionary duty." *Heckler v. Ringer*, 466 U.S. 602, 616-17 (1984). The Fifth Circuit has developed a three (3) part test for determining whether mandamus jurisdiction exists: "(1) the plaintiff must have a clear right to the relief, (2) the defendant must have a clear duty to act, and (3) no other adequate remedy must be available." *Jones v. Alexander*, 609 F.2d 778, 781 (5th Cir. 1980). Additionally, the Fifth Circuit recently affirmed a district court's dismissal of a complaint seeking mandamus relief for lack of jurisdiction. *Kunda v. U.S. Dept. Of Justice*, 215 Fed.Appx. 346 (5th Cir. 2007).  In *Kunda*, a petitioner sought relief from an immigration ALJ, alleging bias, error on the ALJ's part in failing to recuse himself, as well as due-process and equal protection violations. *Id.* at *1. Essentially, the Fifth Circuit held that the petitioner in *Kunda* failed to exhaust administrative remedies in addition to the three-part test outlined above. *Id.*

In this case, the plaintiffs argue that they have a clear right to relief because the Coast Guard had a nondiscretionary duty to provide a fair hearing in front of an unbiased decision-maker. (Rec. Doc. 81, p. 25). Thus, Dresser and Elsik attempt to present the Court not only with a challenge to the actual revocation of the plaintiffs' mariners licenses, but also with the a challenge to the process by which the ALJ conducted the hearings to revoke the licenses. As this Court noted above, the challenge to the actual revocation is not administratively exhausted because of the pending administrative appeal before the Commandant of the Coast Guard. Here,

---

[6] "The district courts shall have original jurisdiction of any action in the nature of mandamus to compel an officer or employee of the United States or any agency thereof to perform a duty owed to the plaintiff." 28 U.S.C. § 1361.

the pending administrative appeal provides the plaintiffs with an adequate remedy to redress the actual revocation of the licenses.

Additionally, the Coast Guard regulations permit the Commandant to review: (1) whether each finding of fact is supported by substantial evidence; (2) whether each conclusion of law accords with applicable law, precedent and public policy; and (3) whether the ALJ abused his or her discretion. 20 C.F.R. § 20.1001. Thus, the Commandant can address the plaintiffs' allegations of due process violations on appeal. Accordingly, the administrative appeal provides the plaintiffs with the pathway for an adequate remedy to redress the procedure for revoking the licenses.[7] Consequently, mandamus is not available because the plaintiffs fail the three (3) part test described by the Fifth Circuit in *Jones* above. *Jones*, 609 F.2d at 781. Therefore, there is no mandamus jurisdiction available to allow the plaintiffs' claims into this Court. Moreover, the Court relies on the reasoning above to correct any manifest error of fact or law in any previous ruling regarding mandamus. Thus, Defendants' motion to reconsider is **GRANTED** on this ground.

### 3. Abstention

In *Younger*, the Supreme Court stated, "courts of equity should not act, and particularly should not act to restrain a criminal prosecution, when the moving party has an adequate remedy at law and will not suffer irreparable injury if denied equitable relief. *Younger v. Harris*, 401 U.S. 37, 43-44 (1971). Courts have applied abstention doctrine to decline equitable jurisdiction over cases when there were ongoing proceedings involving licensing of an occupation. *E.g.,*

---

[7] The plaintiffs argue that the prospective pleadings before the Commandant will be unfair. This Court is not clairvoyant and will not speculate, much less base a legal ruling on speculation.

*Wightman v. Texas Supreme Court,* 84 F.3d 188 (5th Cir. 1996) (ruling that district court appropriately declined to exercise equitable jurisdiction over ongoing state discipline proceedings regarding attorney misconduct). Notably, the Fifth Circuit held that abstention was appropriate when a Marine Corps officer sought to enjoin efforts by the Corps to reactivate him so that charges could be brought against him under the Uniform Code of Military Justice. *Lawrence v. McCarthy*, 344 F.3d 467 (5th Cir. 2003) (noting, "**all** of the issues we are asked to resolve are also before the court-martial") (emphasis in original).

In this case, the United States Coast Guard is not a state, and thus, issues of federal-state comity do not arise. Also, the cases cited above extending abstention are distinguishable from the instant controversy. First, *Wightman* involved a federal court abstaining from exercising jurisdiction during an ongoing state disciplinary process. Second, in *Lawrence*, the court abstained noting that all of the issues were identical between the tribunals. Yet, this Court is presented with different issues than those on appeal before the Coast Guard's Commandant; specifically, Plaintiffs' *Bivens* claim is presented to this Court, but is not before the Commandant of the Coast Guard in the administrative appeal. Consequently, Defendants' motion for reconsideration regarding the appropriateness of abstention fails to show: "(1) an intervening change of controlling law; (2) the availability of new evidence; and/or (3) the need to correct a clear and manifest error of fact or law." *Washington*, 180 F.R.D. at 311. Thus, Defendants' motion is **DENIED** on this ground.

### 4. Supplementation of the Record on Administrative Appeal

In the Court's previous order, the parties were invited to brief the issue of whether the plaintiffs' *Bivens* claims are preempted. Defendants argue that the *Bivens* claims are preempted

12

by the Coast Guard's administrative appeal system. Defendants assert that Dresser is able to supplement the record in his administrative appeal to include allegations of a due process violation, and thus, a *Bivens* remedy is inappropriate in this case.

The regulation for supplementation cited by the Defendants states, "No party may file more than one appellate brief or reply brief, unless (1) The party has petitioned the Commandant in writing; and (2) The Commandant has granted leave to file an added brief." 33 C.F.R. § 20.1003(c). Therefore, this regulation only allows Dresser to apply to the Commandant to supplement the record, it does not actually allow the plaintiff to incorporate information supporting his *Bivens* claim into the administrative record.

In *Bush v. Lucas*, the Supreme Court addressed *Bivens* preemption. The Court held,

The federal courts' statutory jurisdiction to decide federal questions confers adequate power to award damages to the victim of a constitutional violation. When Congress provides an alternative remedy, it may, of course, indicate its intent, by statutory language, by clear legislative history, or perhaps even by the statutory remedy itself, that the Court's power should not be exercised. In the absence of such a congressional directive, the federal courts must make the kind of remedial determination that is appropriate for a common-law tribunal, paying particular heed, however, to any special factors counselling hesitation before authorizing a new kind of federal litigation. *Bush v. Lucas*, 462 U.S. 367, 378 (1983).

Thus, in *Bush v. Lucas*, the Supreme Court held that a *Bivens* remedy for violation of a federal employee's First Amendment rights by his supervisors would not be provided where the claim arose out of the employment relationship, and was governed by meaningful remedies under the statutory Civil Service framework provided by Congress. Furthermore, in *Heaney v. U.S. Veterans Admin.*, the Fifth Circuit held that when Congress "has provided a government employee with a procedure under which a constitutional claim arising out of the employment relationship is cognizable and some measure of relief may be obtained, a nonstatutory [*Bivens*]

13

action is not available." *Heaney v. U.S. Veterans Admin*., 756 F.2d 1215, 1220 (5th Cir. 1985).

Interestingly, the Supreme Court has also noted:

> The APA authorizes judicial review and invalidation of agency action that is arbitrary, capricious, an abuse of discretion, or not in accordance with law, as well as action taken "without observance of procedure required by law." Agency violations of their own regulations, whether or not also in violation of the Constitution, may well be inconsistent with the standards of agency action which the APA directs the courts to enforce. Indeed, some of our most important decisions holding agencies bound by their regulations have been in cases originally brought under the APA. *U.S. v. Caceres*, 440 U.S. 741, 753-54 (1979).

Moreover, the Supreme Court has held, " [w]hen the design of a government program suggests that Congress has provided what it considers adequate remedial mechanisms for constitutional violations that may occur in the course of its administration, we have not created additional *Bivens* remedies." *Schweiker v. Chilicky*, 487 U.S. 412, 423 (1988) (holding that the improper denial of disability benefits, allegedly resulting from due process violations, did not give rise to claims for money damages [*Bivens* action] against government officials that administered program).

In this case, it is clear that the APA applies to S & R hearings. 46 U.S.C. § 7702(a). It is also apparent that the APA grants federal courts broad powers to review agency action, including constitutional violations. 5 U.S.C. §§ 702 and 706. Thus, Congress has provided a comprehensive framework to address and remedy claims of constitutional violations in either the S & R hearings themselves, or upon review in federal court. Therefore, non-statutory (*Bivens*) remedies are not available under *Schweiker*, 487 U.S. at 423. Accordingly, the Court relies on the reasoning above to correct any clear and manifest errors of fact or law appearing in the previous order. *Washington*, 180 F.R.D. at 311. Therefore, Defendants' motion for reconsideration is **GRANTED** on this ground.

14

### 6. Qualified Immunity for ALJ Ingolia

The Fifth Circuit has noted, "[a] qualified immunity defense serves to shield a government official from civil liability for damages based upon the performance of discretionary functions if the official's acts were objectively reasonable in light of then clearly established law." *Atteberry v. Nocona General Hosp.*, 430 F.3d 245, 253. Additionally, the Fifth Circuit has addressed the issue of qualified immunity this year:

> To determine whether an official is entitled to qualified immunity from a suit alleging a constitutional violation, we conduct a familiar two-step inquiry. First, we must ask whether the plaintiff has alleged facts to establish that the official violated the plaintiff's constitutional rights. *Hope v. Pelzer*, 536 U.S. 730, 736, 122 S.Ct. 2508, 153 L.Ed.2d 666 (2002) ("The threshold inquiry a court must undertake in a qualified immunity analysis is whether plaintiff's allegations, if true, establish a constitutional violation."); *Saucier v. Katz*, 533 U.S. 194, 201, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001) ("A court required to rule upon the qualified immunity issue must consider, then, this threshold question: Taken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right?"). Whether the facts establish a violation of a constitutional right is determined with reference to current law. *See Atteberry v. Nocona Gen. Hosp.*, 430 F.3d 245, 253 (5th Cir.2005); *McClendon*, 305 F.3d at 323. If the facts do not establish that the defendant violated the plaintiff's constitutional rights, we need not inquire further. *See Saucier*, 533 U.S. at 201, 121 S.Ct. 2151. If they do, the defendant is still entitled to qualified immunity unless the court finds that the defendant's conduct was objectively unreasonable in light of clearly established law at the time of the state actions at issue. *Breen v. Texas A&M University*, 485 F.3d 325, 332 (5th Cir. 2007).

Accordingly, this Court must first determine whether Plaintiffs have established a constitutional violation, only then will the Court consider whether the actions of the Defendants was objectively reasonable.

Assuming that the ALJ Defendants are "officials" entitled to qualified immunity, the Court must undertake the two-part analysis described above. First, taking Plaintiff Dresser's allegations as true, he has established a constitutional violation because he alleges that the Coast

Guard's S & R hearings were fundamentally unfair. Although the plaintiffs' claims may not be ripe for review because of the APA's "finality" requirement, Dresser has asserted that his due process rights were violated because the Defendants pre-determined the outcome of his case. Therefore, the Court must turn its attention to whether Defendant ALJ Ingolia acted reasonably.

In this case, Dresser alleges that Defendant Ingolia acted improperly by influencing the ALJ's assigned to adjudicate Dresser's S & R hearing. Indeed, Dresser alleges that ALJ Ingolia improperly used his position as Chief Admnistrative Law Judge to improperly influence the junior ALJ's. Again, taking the allegations as true, ALJ Ingolia is not entitled to qualified immunity because it is not objectively reasonable for one ALJ to influence another. See, 33 C.F.R. § 20.202 (describing the powers allocated to ALJ's to conduct "fair, fast and impartial hearings."). Consequently, Defendants' motion for reconsideration regarding the appropriateness of qualified immunity for ALJ Ingolia fails to show: "(1) an intervening change of controlling law; (2) the availability of new evidence; and/or (3) the need to correct a clear and manifest error of fact or law." *Washington*, 180 F.R.D. at 311. Thus, Defendants' motion is **DENIED** on this ground.

## III. CONCLUSION

In light of the foregoing,

IT IS ORDERED that the Defendants' motion for reconsideration is **GRANTED IN PART, AND DENIED IN PART**.

IT IS FURTHER ORDERED that the above captioned matter is **DISMISSED**.

New Orleans, Louisiana, this  8th day of November, 2007.

16

HELEN G. BERRIGAN
UNITED STATES DISTRICT JUDGE